United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

LUIS ADOLFO VILLA,

              Petitioner,

      v.

GISELLE MATTESON,

              Respondent.

Case No.  5:20-cv-05611-EJD

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Re: ECF No. 1

       Petitioner Luis Adolfo Villa is currently incarcerated at the California State Prison, Solano. In 2017, he was convicted of second degree murder for the death of Matthew Johnson, and he now challenges his conviction by petitioning this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  *See* Petition, ECF No. 1.  Petitioner raises four habeas claims in his petition: (1) that the trial court's failure to instruct the jury *sua sponte* to be cautious of the testimony of accomplices violated his Fourteenth Amendment right to due process; (2) that the admission of hearsay testimony violated his Sixth Amendment right to confront witnesses and Fourteenth amendment right to due process; (3) that the trial court's use of an *Allen* charge to the jury violated his Sixth Amendment right to an impartial jury and Fourteenth Amendment right to due process; and (4) that cumulative trial errors violated his Fourteenth Amendment right to due process.  *Id.* at 20.  Respondent filed an answer on the merits.  *See* Answer, ECF Nos. 15, 15-1.  Petitioner filed a traverse.  *See* Traverse, ECF Nos. 21, 21-1.  Having considered the parties' submissions, the record in this matter, and the applicable legal authorities, the petition is **DENIED**.

## I.     BACKGROUND

### A.     Statement of Facts[1]

Early in the morning of January 3, 2009, Johnson was out in Redwood City with two of his friends.  They took a six-pack of soda from a Safeway loading dock and proceeded along some nearby train tracks to an overpass.  From the overpass, they threw several cans of soda and rocks onto the road below.  Two of the rocks hit a car in which Petitioner and three of his cousins—Jonathan Herrera, Uriel Villa, Jr., and Luis Herrera—were riding.  Petitioner and his cousins pursued Johnson and confronted him in a parking lot.  There, some or all of them punched and kicked at Johnson, and Petitioner stabbed Johnson multiple times.  Johnson later passed away from the wounds he sustained during the attack.

Once Petitioner and his cousins learned of Johnson's death, they fled for Mexico.  However, the three cousins soon returned to the United States, after which they spoke to police and testified before a grand jury.  In their interviews with police and before the grand jury, each of the cousins lied about fleeing to Mexico.  Petitioner stayed in Mexico, where he was arrested and then returned to the United States.  At trial, all three cousins testified against Petitioner pursuant to immunity agreements.

### B.     Procedural History

On December 15, 2011, a jury convicted Petitioner of second degree murder.  *People v. Villa*, A152278, 2019 WL 2317149, at *1 (Cal. Ct. App. May 31, 2019).  The California Court of Appeal reversed the conviction, and on February 15, 2017, a jury again convicted Petitioner of second degree murder following a new trial.  *Id.* at *1-2.  Petitioner appealed, and the Court of Appeal affirmed his conviction but remanded for additional proceedings related to sentencing enhancements.  *See generally id.*  He then filed a petition for review in the California Supreme

---

[1] The underlying facts are taken from the factual background of the California Court of Appeal's decision in Petitioner's direct appeal, which may be found at *People v. Villa*, A152278, 2019 WL 2317149, at *2-14 (Cal. Ct. App. May 31, 2019).  The full factual background contains a recitation of all witnesses' testimony, some of which differed in material, incriminating details.  This Order summarizes only the basic facts of Petitioner's crime and does not recount the particulars of each witness's testimony.

Case No.: 5:20-cv-05611-EJD
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
2

United States District Court
Northern District of California

1   Court, which was denied.  ECF No. 16, Ex. E.  On remand, the trial court struck the sentencing

2   enhancements and resentenced Petitioner to a term of 15 years to life.  Petition, ECF No. 1 at 2;

3   Answer, ECF No. 15-1 at 1.

4   **II.    LEGAL STANDARD**

5          The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs federal

6   habeas corpus.  Under AEDPA, federal courts "shall entertain an application for a writ of habeas

7   corpus in behalf of a person in custody pursuant to the judgment of a State court only on the

8   ground that he is in custody in violation of the Constitution or laws or treaties of the United

9   States."  28 U.S.C. § 2254(a).  AEDPA also establishes a highly deferential standard of review.  A

10  federal court may issue a writ of habeas corpus only if the state court proceedings "resulted in a

11  decision that was contrary to, or involved an unreasonable application of, clearly established

12  Federal law, as determined by the Supreme Court of the United States."[2]  28 U.S.C. § 2254(d)(1).

13         "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court

14  arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if

15  the state court decides a case differently than [the Supreme] Court has on a set of materially

16  indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Only the Supreme

17  Court's holdings constitute "clearly established federal law."  *Taylor*, 529 U.S. at 412.   However,

18  circuit law is persuasive authority for determining whether a state court decision is unreasonable

19  and for determining what law is clearly established.  *Duhaime v. Ducharme*, 200 F.3d 597, 600

20  (9th Cir. 2000).  "Under the 'unreasonable application' clause, a federal habeas court may grant

21  the writ if the state court identifies the correct governing legal principle from [the Supreme]

22  Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."

23  *Taylor*, 529 U.S. at 413.  The unreasonable application clause requires that the state court decision

24  be more than "merely wrong."  *White v. Woodall*, 572 U.S. 415, 419 (2014).  Instead, it must be

25  "so lacking in justification that there was an error well understood and comprehended in existing

26

27  _____

[2] Habeas relief may lie for an unreasonable determination of the facts as well.  28 U.S.C.
§ 2254(d)(2).  Petitioner does not argue that there was an unreasonable determination of fact.

28  Case No.: 5:20-cv-05611-EJD
**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

United States District Court
Northern District of California

law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

When conducting habeas review of a state court decision, federal courts turn to the state courts' last reasoned decision. *Kennedy v. Lockyer*, 379 F.3d 1041, 1052 (9th Cir. 2004), *cert. denied*, 544 U.S. 992 (2005); *see also Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) ("[L]ater unexplained orders . . . rejecting the same claim [presumably] rest upon the same ground."). The California Supreme Court denied the petition for review in this case without comment, ECF No. 16, Ex. E, so the Court of Appeal's decision on direct appeal is the relevant state court decision for purposes of this habeas petition.

Finally, even if a state court acted unreasonably in rejecting a petitioner's claim of constitutional error, habeas relief is not warranted if the error was harmless such that it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). When there is "grave doubt" whether an error was "substantial and injurious," that error is not harmless. *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995).

## III.     DISCUSSION

### A.     Exhaustion

A petitioner must exhaust all remedies available in state court before a federal court may grant habeas relief. 28 U.S.C. § 2254(b)(1). However, a federal court may deny a petition on the merits even if claims have not yet been exhausted. 28 U.S.C. § 2254(b)(2). Because the Court denies each of Petitioner's claims on the merits, it declines to address Respondent's exhaustion arguments.

### B.     Claim One: Failure to Provide Accomplice Testimony Instruction

Petitioner argues that his Fourteenth Amendment right to due process was violated when the trial court failed to instruct the jury *sua sponte* that it should view the testimony of accomplices with caution. Petition, ECF No. 1 at 25-33. He contends that the prosecution's case relied primarily on incriminating testimony from Petitioner's cousins, who were accomplices with

United States District Court
Northern District of California

incentives to lie to protect themselves, so failure to provide such instruction caused the jury to improperly evaluate the cousins' credibility as witnesses. *Id.*

### 1.    State Court Decision

The Court of Appeal did not directly address Petitioner's constitutional arguments. Instead, in relevant part, it held:

> Appellant contends the trial court erred when it failed to instruct the jury sua sponte that the testimony of an accomplice should be viewed with caution.

> Section 1111 defines an accomplice "as one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given." " 'The general rule is that the testimony of all witnesses is to be judged by the same legal standard.  In the case of testimony by one who might be an accomplice, however, the law provides two safeguards.  The jury is instructed to view with caution testimony of an accomplice that tends to incriminate the defendant.  It is also told that it cannot convict a defendant on the testimony of an accomplice alone.'  [Citation.]" (*People v. Williams* (2010) 49 Cal.4th 405, 455–456, 111 Cal.Rptr.3d 589, 233 P.3d 1000 (*Williams*).)  The court is required to give an accomplice instruction sua sponte if there is sufficient evidence at trial that the witness is an accomplice. (*People v. Tobias* (2001) 25 Cal.4th 327, 331, 106 Cal.Rptr.2d 80, 21 P.3d 758.)

> Here, according to appellant, Luis, Jonathan, and Uriel were accomplices as a matter of law, and the court therefore should have instructed with CALCRIM No. 335, which is given when there is no dispute regarding whether a witness is an accomplice.  CALCRIM No. 335 provides in relevant part: "Any (statement/ [or] testimony) of an accomplice that tends to incriminate the defendant should be viewed with caution.  You may not, however, arbitrarily disregard it.  You should give that (statement/ [or] testimony) the weight you think it deserves after examining it with care and caution and in light of all the other evidence."(FN17)

>> FN17:  Appellant does not challenge the court's failure to give the part of the instruction that explains that an accomplice's testimony must also be corroborated.  (CALCRIM No. 335 [jury may not convict defendant based on testimony "of an accomplice alone"].)

> In this case, assuming for purposes of argument that the court erred in failing to instruct the jury that Luis, Jonathan, and Uriel were accomplices and their testimony should be viewed with caution pursuant to CALCRIM No. 335, we conclude any such error was harmless.

> "Error in failing to instruct the jury on consideration of accomplice

testimony at the guilt phase of a trial constitutes state-law error, and a reviewing court must evaluate whether it is reasonably probable that such error affected the verdict. [Citation.]" (*Williams*, *supra*, 49 Cal.4th at p. 456, 111 Cal.Rptr.3d 589, 233 P.3d 1000; accord, *People v. Mackey* (2015) 233 Cal.App.4th 32, 125, 182 Cal.Rptr.3d 401 (*Mackey*).) "The purpose of the accomplice testimony rule is to ensure the jury maintains a skeptical attitude about the witness. [Citation.]" (*Mackey*, at p. 125, 182 Cal.Rptr.3d 401.) "Therefore, any error in failing to give [an accomplice] instruction may be harmless if there are other circumstances which would cause the jury to mistrust the accomplice testimony ...." (*People v. DeJesus* (1995) 38 Cal.App.4th 1, 26, 44 Cal.Rptr.2d 796.)

*Villa*, 2019 WL 2317149, at *14-15 (alterations in original) (footnotes reformatted). The Court of Appeal then proceeded to apply harmless error analysis under the standard it described above. *Id.* at *15-16. Petitioner contends that the only question is "whether petitioner was prejudiced," because the Court of Appeal assumed that failure to instruct was error. Petition, ECF No. 1 at 27. This is a misreading of the Court of Appeal's opinion. Citing *People v. Williams*, 49 Cal. 4th 405 (2010), the Court of Appeal explained that failure to provide an accomplice instruction "constitutes *state-law* error" and applied a *state-law* harmless error analysis. *Villa*, 2019 WL 2317149, at *15 (emphasis added). By emphasizing that the claimed error was one of state law, the Court of Appeal implicitly rejected Petitioner's federal due process argument.[3] *See Ortiz v. Yates*, 704 F.3d 1026, 1033 n.4, 1034 (9th Cir. 2012) (finding that, by relying on a state decision which held the claimed error was not of constitutional magnitude, the state court implicitly denied a claim of constitutional error). Accordingly, this Court begins by analyzing whether there was constitutional error under AEDPA's deferential standard of review.

### 2.    Instructional Error

"'Failure to give [a jury] instruction which might be proper as a matter of state law,' by itself, does not merit federal habeas relief." *Menendez v. Terhune*, 422 F.3d 1012, 1029 (9th Cir. 2005) (quoting *Miller v. Stagner*, 757 F.2d 988, 993 (9th Cir. 1985)) (alteration in original). A state instructional error rises to the level of federal constitutional error only if it "so infected the

---

[3] At best for Petitioner, the Court of Appeal was silent on the issue of his constitutional claim. In that case, this Court must still "presume that the federal claim was adjudicated on the merits" for the purposes of habeas review. *Johnson v. Williams*, 568 U.S. 289, 301 (2013).

1   entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72

2   (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).  The party raising a claim of

3   constitutional error bears the burden of showing a "reasonable likelihood" that the jury applied

4   deficient instructions in a way violating the Constitution.  *Id.*  This burden is "especially heavy"

5   when challenging an omitted instruction rather than an erroneous one, because "[a]n omission . . .

6   is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145,

7   155 (1977).  Evaluating whether an omission meets the high bar for constitutional error requires a

8   court to consider "the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S.

9   at 72.  As such, "counsel's arguments [may] clarif[y] an ambiguous jury charge." *Middleton v.*

10  *McNeil*, 541 U.S. 433, 438 (2004) (per curiam).

11          As an initial matter, there is no clearly established federal law that there are constitutional

12  limitations on the use of accomplice testimony.  To the contrary, the Supreme Court has held that

13  "the use of accomplice testimony is not catalogued with constitutional restrictions." *United States*

14  *v. Augenblick*, 393 U.S. 348, 352 (1969).  On this basis alone, it was reasonable for the state court

15  to conclude that Petitioner's alleged instructional error does not rise to the level of a constitutional

16  violation.

17          Even if Petitioner had identified a clearly established constitutional right connected to the

18  use of accomplice testimony, he has not shown a "reasonable likelihood" that omitting the

19  accomplice testimony instruction would cause the jury to improperly credit his cousins' testimony.

20  Review of the record reveals that concerns with the cousins' credibility were thoroughly aired

21  throughout the trial.  The jury was aware that each of the cousins were at the scene of Johnson's

22  murder.  6 RT 626-39[4] (J. Herrera); 7 RT 742-56 (U. Villa, Jr.); 8 RT 853-68 (L. Herrera).  It

23  knew that all three attempted to flee to Mexico following the murder.  7 RT 661-64, 675-80 (J.

24  Herrera); 7 RT 772-83 (U. Villa, Jr.); 8 RT 880-85 (L. Herrera).  And it heard from the cousins

25

26  [4] "RT" refers to the Reporter's Transcript, which is lodged with this Court at ECF Nos. 15 and 16.
    Citations to the Reporter's Transcript follow the convention: [Vol.] RT [Pages].  The Clerk's

27  Transcript, lodged with this Court at ECF No. 15, is referred to as "CT."  Citations to the Clerk's
    Transcript follow the same convention as citations to the Reporter's Transcript.

28  Case No.: 5:20-cv-05611-EJD
    ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

United States District Court
Northern District of California

that they had lied to police, perjured themselves before a grand jury, and were testifying at trial subject to immunity agreements.  7 RT 680-82, 687-90 (J. Herrera); 7 RT 784-86, 791-93 (U. Villa, Jr.); 8 RT 889-93, 899-902 (L. Herrera).  Counsel for both the prosecution and defense also made the cousins' credibility a centerpiece of their opening and closing arguments.  For example, defense counsel characterized Petitioner's cousins as "admitted perjurers" and referred to their testimony as "obvious falsity and perjury."  11 RT 1406, 1422; *see also* 11 RT 1424-30.  The prosecutor, too, admitted to the jury that there were significant credibility concerns surrounding Petitioner's cousins.  11 RT 1371-72.

Petitioner contests the significance of the attention paid to the cousins' credibility during trial, arguing that jurors were never instructed on how to assess the cousins' credibility.  Petition, ECF No. 1 at 28.  But the trial court provided extensive guidance to the jury about how to evaluate credibility, identifying specific considerations and explaining in detail how much or how little of a witness's testimony a juror could accept after making a credibility determination:

> You alone must judge the credibility or believability of the witnesses. In deciding whether testimony is true and accurate, use your common sense and experience.  You must judge the testimony of each witness by the same standards, setting aside any bias or prejudice you may have.  You may believe all, part, or none of any witness's testimony. Consider the testimony of each witness and decide how much of it you believe.
>
> In evaluating a witness's testimony, you may consider anything that reasonably tends to prove or disprove the truth or accuracy of the testimony.  Among the factors that you may consider are; how well could the witness see, hear, or otherwise perceive the things about which the witness testified?  How well is the witness able to remember and describe what happened?  What is the witness's behavior while testifying?  Did the witness understand the questions and answer them directly?  Is the witness's testimony influenced by a factor, such as a bias or prejudice; a personal relationship with someone involved in the case; or a personal interest in how the case is decided?  What is the witness's attitude about the case or about testifying?  Did the witness make a statement in the past this [sic] is consistent or inconsistent with his or her testimony?  How reasonable is the testimony when you consider all the other evidence in the case? Did other evidence prove or disprove any fact about which the witness testified?
>
> Do not automatically reject testimony just because of inconsistencies or conflicts.  Consider whether the differences are important or not.

Case No.: 5:20-cv-05611-EJD
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

> People sometimes honestly forget things or make mistakes about what they remember.  Also, two people may witness the same event, yet see or hear it differently.  If you decide that a witness deliberately lied about something significant in the case, you should consider not believing anything that witness says; or, if you think the witness lied about some things, but told the truth about others, you may simply accept the part that you think is true and ignore the rest.

5 RT 355-56.  To the extent these instructions were ambiguous, the prosecutor clarified that the instructions offered multiple factors the jury could weigh when assessing credibility.  11 RT 1371-73.  He urged the jury to carefully evaluate whether to believe Petitioner's cousins and acknowledged that the jury could choose to discount a witness's entire testimony if it believed that the witness had deliberately lied.  *Id.*  These clarifications are especially compelling because it was "the *prosecutor's* argument that resolve[d] an ambiguity in favor of the *defendant*."  *Middleton*, 541 U.S. at 438.  Moreover, issuing the accomplice instruction would not have provided any additional guidance on how to weigh credibility.  The instruction warns jurors to treat accomplice testimony "with care and caution and in light of all the other evidence" but does not identify any factors or other approaches for assessing the credibility of accomplices.  Petition, ECF No. 1 at 28.

Petitioner also argues that the given jury charge required jurors to "*ignore* all of the credibility concerns inherent in the accomplice testimony."  Traverse, ECF No. 21-1 at 6 (emphasis in original).  He points to the instruction, "You must judge the testimony of each witness by the same standards, setting aside any bias or prejudice you may have," as a directive to ignore common sense.  *Id.*  This argument is implausible on its face.  Immediately before the sentence he singles out, the trial court directed jurors to "use your common sense and experience" when assessing credibility.  5 RT 355.  Further, the natural reading of the instruction to avoid bias or prejudice is that all witnesses should be assessed objectively, not that jurors are barred from taking into account evidence that calls accomplices' credibility into question.  Indeed, there is evidence that jurors *did* weigh the credibility of Petitioner's cousins during deliberations, because the jury specifically asked which witnesses were testifying pursuant to immunity agreements. 4 CT 1163.

Considering the jury instructions as a whole and in the context of the trial record, it was a

1    reasonable application of clearly established federal law for the Court of Appeal to conclude that

2    no constitutional error occurred.  For the same reasons, this Court concludes that the lack of such

3    instruction was harmless and did not have a substantial and injurious effect on the jury's verdict.

4    **C.    Claim Two: Admission of Hearsay Testimony**

5        Petitioner argues that his Sixth Amendment right to confrontation and Fourteenth

6    Amendment right to due process were violated when the state court admitted a hearsay statement

7    in which Petitioner's father told Jonathan Herrera not to speak with others about the events

8    surrounding Johnson's murder.  Petition, ECF No. 1 at 34-40.  Petitioner claims that admitting the

9    statement violated the Confrontation Clause because he did not have the opportunity to cross

10   examine Petitioner's father.  *Id.* at 37.  He further contends that the statement by Petitioner's father

11   contained an implied admission of Petitioner's guilt, so admitting the statement violated due

12   process by rendering the trial fundamentally unfair and further required the trial court to instruct

13   the jury that it could not infer such an admission of Petitioner's guilt.  *Id.* at 38-40.

14   **1.    State Court Decision**

15   The Court of Appeal addressed Petitioner's claim as follows:

16       "[A]n out-of-court statement is hearsay only when it is 'offered to
         prove the truth of the matter stated.' [Citation.]  Because a request,
17       by itself, does not assert the truth of any fact, it cannot be offered to
         prove the truth of the matter stated.  [Citations.]" (*People v.
18       Jurado* (2006) 38 Cal.4th 72, 117, 41 Cal.Rptr.3d 319, 131 P.3d 400
         (*Jurado*), citing, inter alia, *People v. Reyes* (1976) 62 Cal.App.3d 53,
19       67, 132 Cal.Rptr. 848 [" 'words of direction or authorization do not
         constitute hearsay since they are not offered to prove the truth of any
20       matter asserted by such words' "].)

21       Here, appellant's father's statement to Jonathan not to tell anyone what
         had happened was plainly a direction or request, admitted to show its
22       effect on Jonathan.  (See *Jurado*, *supra*, 38 Cal.4th at p. 117, 41
         Cal.Rptr.3d 319, 131 P.3d 400.)  Jonathan in fact testified to the effect
23       of the statement: even though he did not want to go to Mexico,
         appellant's father's statement made him feel pressured, "like [he]
24       couldn't do anything about it" and "[l]ike [he had] to leave."

25       In his reply brief, appellant attempts to distinguish *Jurado* by arguing
         that "[t]his case is different, because the supposed words of direction
26       contained implied hearsay that appellant made an incriminatory
         admission."  Although appellant cites no case to support this claim,
27       we observe that in *People v. Garcia* (2008) 168 Cal.App.4th 261, 289,

28   Case No.: 5:20-cv-05611-EJD
     ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

United States District Court
Northern District of California

85 Cal.Rptr.3d 393 (*Garcia*), the appellate court stated that a declarant's words of direction can be *implied* hearsay " 'if such evidence is offered to prove—not the truth of the matter that is stated in such statement expressly—but the truth of a matter that is stated in such statement by implication.' [Citations.]" The *Garcia* court explained: " 'An implied statement may be inferred from an express statement whenever it is reasonable to conclude: (1) that declarant *in fact intended* to make such implied statement, or (2) that a recipient of declarant's express statement would *reasonably believe* that declarant intended by his express statement to make the implied statement.' [Citation.]" (*Ibid.*)

In the present case, we do not believe that it can reasonably be inferred from appellant's father's statement either (1) that he intended to imply that appellant had told him that he stabbed Johnson, or (2) that Jonathan believed that appellant's father intended to make such an implied statement. (See *Garcia*, *supra*, 168 Cal.App.4th at p. 289, 85 Cal.Rptr.3d 393.)   Moreover, even assuming appellant's father intended to imply by his statement that he believed appellant was involved in the attack and, therefore, the statement *was* implied hearsay, we find any error by the court in admitting this evidence harmless under *People v. Watson* (1956) 46 Cal.2d 818, 836, 299 P.2d 243. (See *Garcia*, at pp. 291–292, 85 Cal.Rptr.3d 393 [applying state law standard of error; federal constitutional standard was not applicable since confrontation clause is implicated only by testimonial hearsay].)

First, Jonathan's testimony on this point was brief and minimal in the context of this lengthy trial involving hundreds of pages of testimony. Second, even if the testimony implied that appellant's father believed appellant was involved in the attack, based on something he overheard or was told during one of the many conversations about the stabbing among family members (see pt. II.B.2), there was extensive other—and much stronger—testimony, not only by the three witnesses who were also present at the scene, but also by Campos and Uriel Sr. regarding appellant's use of a knife in the attack and/or his post-attack admissions that he had done so.  For example, Jonathan testified that, not only did he see appellant stabbing Johnson, but that appellant also stabbed him, which required a trip to the hospital.  Uriel Jr. testified that he heard appellant say he was going to stab Johnson, and Luis, Uriel, and Jonathan all testified that they saw appellant with the knife in the car after the attack, where he also admitted stabbing Johnson.   Accordingly, considering the quantity of evidence implicating appellant in the stabbing, it is not reasonably probable that a result more favorable to appellant would have been reached had this statement been excluded. (See *People v. Watson*, *supra*, 46 Cal.2d at p. 836, 299 P.2d 243.)

Appellant further argues that the court erred in failing to instruct the jury sua sponte with the third paragraph of CALCRIM No. 371, which provides in relevant part: "If someone other than the defendant tried to ... conceal or destroy evidence, that conduct may show the defendant was aware of (his/her) guilt, but only if the defendant was present and knew about that conduct, or, if not present, authorized the

1    other person's actions."  The court did instruct the jury with the first
2    paragraph of CALCRIM No. 371, which states, "If the defendant tried
     to hide evidence, that conduct may show that he was aware of his
3    guilt.  If you conclude that the defendant made such an attempt, it is
     up to you to decide its meaning and importance; however, evidence
4    of such an attempt cannot prove guilt by itself."(FN19)  Apparently,
     the prosecutor had originally requested that the court also instruct the
5    jury with the third paragraph of CALCRIM No. 371, but during a
     discussion with the court and defense counsel, the prosecutor
6    withdrew his request for that portion of the instruction.  The court
     responded, "That would have been my ruling in any event.  I didn't
7    see anything that really substantiated that."  The court therefore said
     it would give only the first paragraph of the instruction.  There was
     no objection or comment by defense counsel during this discussion.

8        FN19:  During closing argument, the prosecutor discussed this
9        paragraph of the instruction in connection with the evidence
         regarding appellant's decisions to tear Jonathan's pants, ask his
10       family to burn the clothes he had worn during the incident, and
         dispose of the knife he had used to stab Johnson.

11   Although defense counsel did not request that the court instruct with
12   the third paragraph of CALCRIM No. 371, appellant asserts in his
     reply brief that the issue is not forfeited because the court did instruct
13   the jury with the first paragraph of CALCRIM No. 371, and it
     therefore had a duty to instruct correctly on that topic, which required
14   it to include the third paragraph.  (See *People v. Townsel* (2016) 63
     Cal.4th 25, 58, 201 Cal.Rptr.3d 19, 368 P.3d 569 [noting that
15   defendant "relies on the principle that once a trial court undertakes to
     instruct on a legal point, it must do so correctly"].)  Even assuming
16   the contention is not forfeited, as we shall explain, we find it to be
     without merit.

17   Appellant asserts that an instruction telling the jury that it could hold
18   him responsible for his father's "threat" to Jonathan only if he
     authorized it was necessary because "the logical inference for the jury
19   to make from the threat was that appellant had admitted the crime to
     his father."  However, this is mere speculation on the part of appellant.
20   There was no evidence that appellant was present when his father
     spoke or that he had asked his father to make the statement to
21   Jonathan, and the prosecutor did not argue that the statement reflected
     appellant's consciousness of guilt.  Moreover, in terms of inferences
22   the jury might make, as noted, the evidence shows that there were
     conversations among various people about the stabbing and several
23   other ways appellant's father could have learned of appellant's
     involvement.  For example, he could have been told about it by
24   Jonathan, Luis, or appellant's sister Carina, or could have simply
     overheard a discussion of the stabbing while at the house in Gilroy.
25   Thus, in addition to the fact that the statement was not hearsay and
     was offered only to show its effect on Jonathan, there is no basis for
26   believing the jury would assume that appellant had authorized his
     father to speak to Jonathan on his behalf, given the lack of evidence
27   supporting such an assumption.

28   Case No.: 5:20-cv-05611-EJD
     ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Consequently, the court did not err when it failed to instruct sua sponte with the third paragraph of CALCRIM No. 371, after finding that it was inappropriate considering the evidence in the case. (Cf. *People v. Bell* (2004) 118 Cal.App.4th 249, 256, 12 Cal.Rptr.3d 808 [while a jury may be told that an attempt to fabricate evidence "*by the defendant* may show a consciousness of guilt," "such an instruction is improper if the only evidence is that a third party made such an attempt, unless the evidence would also support a conclusion the defendant authorized the third party's action"].)

*Villa*, 2019 WL 2317149, at *17-19 (alterations in original) (footnotes reformatted).

### 2.      Confrontation Clause

The Confrontation Clause bars admission of testimonial statements of a witness "who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 54 (2004).  A statement is testimonial if its "primary purpose" was to "creat[e] an out-of-court substitute for trial testimony." *Ohio v. Clark*, 576 U.S. 237, 245 (2015) (quoting *Michigan v. Bryant*, 562 U.S. 344, 358 (2011)) (alteration in original).  When analyzing Petitioner's hearsay claim, the Court of Appeal determined that the "federal constitutional standard was not applicable since [the] confrontation clause is implicated only by testimonial hearsay." *Villa*, 2019 WL 2317149, at *18 (citing *People v. Garcia*, 168 Cal. App. 4th 261, 291-92 (2008)); *see also Ortiz*, 704 F.3d at 1033 n.4, 1034.  The Court of Appeal's determination is a reasonable application of federal law because nothing in the record indicates that the statement by Petitioner's father was intended to assist any investigation or legal proceeding.

### 3.      Fundamental Fairness and Instructional Error

The Court of Appeal did not address Petitioner's due process arguments, so it is assumed that the Court of Appeal rejected those arguments on the merits; therefore this Court applies deferential AEDPA review. *Johnson*, 568 U.S. at 301.

Petitioner argues that admitting the statement by Petitioner's father was an error "of such magnitude that it rendered petitioner's trial fundamentally unfair."  Petition, ECF No. 1 at 38.  Although hearsay is a state evidentiary matter, federal habeas review is available when a "state law error rises to the level of a due process violation." *Smith v. Ryan*, 823 F.3d 1270, 1282 n.8

United States District Court
Northern District of California

1    (9th Cir. 2016) (citing *Lewis v. Jeffers*, 497 U.S. 764, 781 (1990)).[5]  The Supreme Court has

2    "defined the category of infractions that violate 'fundamental fairness' very narrowly," and

3    "[b]eyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has

4    limited operation."  *Estelle*, 502 U.S. at 73 (quoting *Dowling v. United States*, 493 U.S. 342, 352

5    (1990)).

6         Petitioner frames the challenged hearsay statement as an implied admission of guilt, but

7    the language of the challenged statement does not support that interpretation.  Jonathan Herrera's

8    testimony about the statement was innocuous:

9         Q. What did [Petitioner's] father say to you?
          A. He told me not to tell anybody about what had happened.
10        Q. Did he say anything specifically about [Petitioner]?
          A. Yes.
11        Q. What did he say?
          A. He said that [Petitioner] is like my brother; that I shouldn't say
12        anything to anybody about what had happened.

13   7 RT 668.  Jonathan Herrera did not testify that Petitioner asked his father to request others'

14   silence, nor did the statement by Petitioner's father refer to any specific actions by Petitioner, let

15   alone indicate that Petitioner had stabbed Johnson.  Nothing in this exchange implies that

16   Petitioner had confessed to his father.  At most, it suggests that Petitioner's father was concerned

17   about his son being involved in a situation ending with Johnson's death.  However, during opening

18   arguments, the prosecutor offered a slightly different version of the statement at issue,

19   representing that Petitioner's father told Jonathan Herrera, "Don't speak to anyone about what

20   [Petitioner] did.  Say nothing."  5 RT 374.  While this formulation implies that Petitioner had

21   taken part in the attack on Johnson in some unspecified way, it requires a speculative leap to infer

22   that Petitioner told his father he had stabbed Johnson.  And in any case, the trial court instructed

23   jurors that counsel's arguments are not evidence.  5 RT 354.

24        The facts here are unlike those in cases where courts have held erroneous admission of

25

26   _____

27   [5] To the extent Petitioner is arguing that, independent of the Due Process Clause, the state court
     made an error of state law warranting habeas relief, such a claim is not cognizable.  *Smith*, 823
     F.3d at 1282 n.8.

28   Case No.: 5:20-cv-05611-EJD
     ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
                                        14

United States District Court
Northern District of California

evidence violated the Constitution.  For example, Petitioner cites *McKinney v. Rees*, but there, the erroneously admitted evidence was "pervasive[]," and there were "*no* permissible inferences the jury could have drawn from [that] evidence."  993 F.2d 1378, 1384, 1386 (9th Cir. 1993).  Here, by contrast, the statement of Petitioner's father was referenced only twice, and the jury could have properly inferred that Petitioner's father was pressuring Jonathan Herrera not to speak with police.  Thus, it was reasonable to conclude that the admission of the challenged statement did not render the trial fundamentally unfair.

Petitioner also contends that the trial court should have instructed the jury that, unless there was evidence Petitioner had authorized the statement, it could not infer from the statement of Petitioner's father that Petitioner had admitted guilt.  Petition, ECF No. 1 at 39-40.  To succeed on this argument, Petitioner bears the heavy burden to show that there was a "reasonable likelihood" that the jury would act in a way that renders the trial fundamentally unfair due to the omission of his requested instruction.  *See supra* Section III.B.2.  As the Court of Appeal observed, there was no evidence that Petitioner had authorized the statement, and nobody at trial argued that Petitioner had done so.  *Villa*, 2019 WL 2317149, at *19.  This was the problem, according to Petitioner, because it meant that an instruction was needed to prevent the jury from making an improper inference.  Petition, ECF No. 1 at 40.  But whether or not such an inference is inappropriate, Petitioner must first show that the jury was reasonably likely to make that inference.  In the absence of evidence or argument, there is little reason to believe that the jury would infer Petitioner's admission of guilt from the challenged statement, and as discussed above, the statement itself does not suggest such an inference.  Accordingly, it was also reasonable to conclude that there was no instructional error of constitutional magnitude.

Regardless, any error was harmless under *Brecht*.  An error is harmless if there was other, stronger evidence that would support conviction.  *Sims v. Brown*, 425 F.3d 560, 570-71 (9th Cir. 2005).  That is the case here, where, for example, witnesses saw Petitioner stab Johnson, heard Petitioner admit to the stabbing, and observed Petitioner with a knife in the immediate aftermath of the attack on Johnson.  6 RT 630-35, 641-42; 7 RT 749-52, 757, 762-67; 8 RT 869-71.  The

1   challenged statement was also only briefly alluded to during the trial—once during the

2   prosecutor's opening argument and once during direct examination of Jonathan Herrera—and it

3   was not a centerpiece of the prosecution's argument.  5 RT 374; 7 RT 668.  While the brevity of

4   Jonathan Herrera's testimony is not dispositive, it is a relevant consideration in harmless error

5   analysis.  *See Brecht*, 507 U.S. at 639 (finding an error to be harmless in part because improper

6   references "compris[ed] less than two pages of the 900-page trial transcript").  That being so, the

7   Court finds that admitting the statement by Petitioner's father did not have a substantial and

8   injurious effect on the conviction.

9           To conclude, the Court finds the state court reasonably determined that admitting hearsay

10   by Petitioner's father did not rise to the level of a constitutional violation under either Petitioner's

11   fundamental fairness theory or instructional error theory, and even if it did, habeas relief is not

12   warranted because admitting the hearsay was harmless.

13           **D.      Claim Three: Use of *Allen* Charge**

14           Petitioner argues that the trial court unconstitutionally coerced the jury in violation of his

15   Sixth Amendment right to an impartial jury and Fourteenth Amendment right to due process when

16   it issued an *Allen* charge to the jury.  Petition, ECF No. 1 at 41-46.  The trial court instructed the

17   jury with the following:

18           Sometimes juries [that] have difficulty reaching a verdict are able to
             resume deliberations and successfully reach a verdict on one or more
19           counts.

20           Please consider the following suggestions; do not hesitate to re-
             examine your own views.  Fair and effective jury deliberations require
21           a frank and forthright exchange of views.  Each of you must decide
             the case for yourself and form your individual opinion after you have
22           fully and completely considered all the evidence with your fellow
             jurors.
23
             It is your duty as jurors to deliberate with the goal of reaching a
24           verdict; if you can do so; without surrendering your individual
             judgment.  Do not change your position just because it differs from
25           that of other jurors or just because you are—you or others want to
             reach a verdict.  Both the People and defendant are entitled to the
26           individual judgment of each juror.

27           It is up to you to decide how to conduct your deliberations.  You may

28   Case No.: 5:20-cv-05611-EJD
     ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

United States District Court
Northern District of California

want to consider new approaches in order to get a fresh perspective. Let me know whether I can do anything to help you further, such as give additional instructions or clarify instructions that I; or, in this case, Judge Mallach; have already given you.

Please continue your deliberations at this time. If you wish to communicate with me further, please do so in writing and give it to the bailiff as you've done in the past.

So I'd like you to at least go back and continue your deliberations. And if you need anything further from me, please don't hesitate to let me know.

11 RT 1489-90. Petitioner also argues that the trial court violated California Rule of Court 2.1036(a), and thereby the Due Process Clause, when it failed to ask jurors whether they had specific concerns which, if resolved, might assist them in reaching a verdict. Petition, ECF No. 1 at 46-47.

### 1.        State Court Decision

The Court of Appeal analyzed Petitioner's claim as follows:

#### 1. *CALCRIM No. 3551*

In *People v. Gainer* (1977) 19 Cal.3d 835, 139 Cal.Rptr. 861, 566 P.2d 997 (*Gainer*), disapproved on another ground by *People v. Valdez* (2012) 55 Cal.4th 82, 163, 144 Cal.Rptr.3d 865, 281 P.3d 924, our Supreme Court addressed the permissible limits of a trial court's instruction encouraging deadlocked jurors to attempt to reach a verdict. The court held that "it is error for a trial court to give an instruction which either (1) encourages jurors to consider the numerical division or preponderance of opinion of the jury in forming or reexamining their views on the issues before them; or (2) states or implies that if the jury fails to agree the case will necessarily be retried." (*Gainer*, at p. 852, fns., 139 Cal.Rptr. 861, 566 P.2d 997 omitted.) The *Gainer* court disapproved of the so-called "*Allen* charge" or "dynamite" instruction—approved by the United States Supreme Court in *Allen v. United States* (1896) 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528—which was used as a means of " 'blasting' a verdict out of a deadlocked jury." (*Gainer* at pp. 842–843, 139 Cal.Rptr. 861, 566 P.2d 997.) Because such an instruction tells "the jury to consider extraneous and improper factors, inaccurately states the law, carries a potentially coercive impact, and burdens rather than facilitates the administration of justice, [the court] conclude[d] that further use of the charge should be prohibited in California." (*Ibid.*)

In *People v. Moore* (2002) 96 Cal.App.4th 1105, 1118–1120, 117 Cal.Rptr.2d 715 (*Moore*), the appellate court upheld an instruction similar to the one given in this case after the jury stated it could not reach a verdict following one day of deliberations. The court rejected

Case No.: 5:20-cv-05611-EJD
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
17

United States District Court
Northern District of California

the same arguments appellant makes here—that the instructions were coercive and improper—and instead commended the trial court "for fashioning such an excellent instruction." (*Id.* at p. 1122, 117 Cal.Rptr.2d 715.) The court also found that the supplemental instructions were not improper under *Gainer*. (*Moore*, at pp. 1120–1121, 117 Cal.Rptr.2d 715.)

Appellant suggests that *Moore* was wrongly decided and "warrants re-examination," and further argues that CALCRIM No. 3551 does in fact violate *Gainer*.

Appellant first claims that the part of CALCRIM No. 3551 that states, "Do not hesitate to re-examine your views" is equivalent to the improper admonition given in *Gainer* that "a dissenting juror should consider whether a doubt in his or her own mind is a reasonable one." (*Gainer*, *supra*, 19 Cal.3d at p. 848, 139 Cal.Rptr. 861, 566 P.2d 997.) Appellant is incorrect. Unlike the instruction disapproved in *Gainer*, CALCRIM No. 3551 does not mention the existence of a majority and minority position or put pressure on minority jurors to agree with the majority opinion. (See *Gainer*, at p. 852, 139 Cal.Rptr. 861, 566 P.2d 997.) Instead, it admonishes the jurors not to "change your position just because it differs from that of other jurors or just because you ... or others want to reach a verdict. Both the People and defendant are entitled to the individual judgment of each juror." (CALCRIM No. 3551; cf. *People v. Valdez*, *supra*, 55 Cal.4th at pp. 160, 162, 144 Cal.Rptr.3d 865, 281 P.3d 924 [instruction telling jurors in both "the minority" and "the majority" to "reweigh your positions" "did not in any way single out minority jurors" or "encourage jurors in the minority to abandon their independent judgment and acquiesce in a verdict simply because the majority had reached a verdict"].)

Appellant also claims that the part of CALCRIM No. 3551 that states, "It is your duty to deliberate with goals of reaching a verdict, if you can do so without surrendering your individual judgment" is the equivalent of the language disapproved in *Gainer*, that "[y]ou should consider that the case must sometime be decided." (*Gainer*, *supra*, 19 Cal.3d at p. 851, 139 Cal.Rptr. 861, 566 P.2d 997.) Again, appellant is incorrect. Unlike the improper instruction given in *Gainer*, there was no language in the instruction given here informing the jury that a failure to reach a verdict would necessarily result in a retrial. It simply asked jurors to continue their deliberations in an effort to reach a verdict, but only to the extent they could do so "without surrendering [their] individual judgment." (CALCRIM No. 3551; see *People v. Virgil* (2011) 51 Cal.4th 1210, 1280, 1282, 126 Cal.Rptr.3d 465, 253 P.3d 553 [it was not coercive for court to instruct jury that it "must make every effort to reach [a] unanimous verdict if at all possible" in response to jury's question about what would happen if it was unable to reach a unanimous decision]; *People v. Butler* (2009) 46 Cal.4th 847, 884, 95 Cal.Rptr.3d 376, 209 P.3d 596 [court properly instructed deadlocked jury "to pursue 'the purpose of reaching a verdict, *if you can do so*,' and that it was their 'duty to decide the case, *if you can conscientiously do so*' "].)

Hence, the court properly instructed the jury with CALCRIM No.

3551, which, unlike the instruction disapproved in *Gainer*, did *not* ask "the jury to consider extraneous and improper factors, inaccurately [state] the law, [or carry] a potentially coercive impact." (*Gainer*, *supra*, 19 Cal.3d at pp. 842–843, 139 Cal.Rptr. 861, 566 P.2d 997; see *Moore*, *supra*, 96 Cal.App.4th at pp. 1120–1121, 117 Cal.Rptr.2d 715.)(FN20)

> FN20: Having concluded that the trial court properly instructed the jury with CALCRIM No. 3551, we reject appellant's claim that the instruction violated his due process and unanimous jury trial rights under the California Constitution and the due process clause of the United States Constitution.

### 2. *California Rules of Court, Rule 2.1036*(FN21)

> FN21: All further rule references are to the California Rules of Court.

Appellant next argues that even if the court properly instructed the jury after it declared it was hung, the court should not have given CALCRIM No. 3551 before further inquiring into the jury's deadlock. Specifically, he asserts that the court was required to follow rule 2.1036(a), which states in relevant part: "After a jury reports that it has reached an impasse in its deliberations, the trial judge may, in the presence of counsel, advise the jury of its duty to decide the case based on the evidence while keeping an open mind and talking about the evidence with each other.  *The judge should ask the jury if it has specific concerns which, if resolved, might assist the jury in reaching a verdict.*"  (Italics added.)(FN22)  According to appellant, the court in this case should have followed the admonition in the italicized portion of rule 2.1036(a), above.  He asserts that his "right to have proper inquiry made of the jury was lost in the transition between Judge Mallach and Judge Dylina" and that neither judge properly exercised his or her discretion in determining whether to deliver CALCRIM No. 3551.

> FN22: Rule 2.1036(b) states: "If the trial judge determines that further action might assist the jury in reaching a verdict, the judge may: [¶] (1) Give additional instructions; [¶] (2) Clarify previous instructions; [¶] (3) Permit attorneys to make additional closing arguments; or [¶] (4) Employ any combination of these measures."

First, Judge Mallach, who overruled defense counsel's objection and decided to instruct the jury with CALCRIM No. 3551 if it reached an impasse, had been with the jury throughout the trial.  She had responded to the many questions the jury asked over the course of the first five days of deliberations.  On the sixth day, just after Judge Dylina took over for Judge Mallach, the jury declared itself "hung" and Judge Dylina properly gave the instruction that Judge Mallach had, in her discretion, determined would be appropriate.

Second, nothing in rule 2.1036 *requires* the court to inquire whether

the jury has specific concerns before giving an instruction on attempting to overcome the impasse. (See *People v. Salazar*, *supra*, 227 Cal.App.4th at p. 1088, 174 Cal.Rptr.3d 395 ["While rule 2.1036 does not state so expressly, it is apparent the trial court has discretion when choosing whether to resort to the tools provided and how to use those tools"]; see also *People v. Bell* (2007) 40 Cal.4th 582, 616–617, 54 Cal.Rptr.3d 453, 151 P.3d 292 [concluding that "the denial of a mistrial without further inquiry was not an abuse of discretion"; "[w]hile the trial court has a duty to avoid coercing the jury to reach a verdict, we have held that inquiry as to the possibility of agreement is 'not a prerequisite to denial of a motion for mistrial.' "], disapproved on another ground in *People v. Sanchez* (2016) 63 Cal.4th 665, 686, fn. 13, 204 Cal.Rptr.3d 102, 374 P.3d 320.)(FN23)

FN23: Also, in giving CALCRIM No. 3551, Judge Dylina did inform the jury to "[l]et me know whether I can do anything to help you further, such as give additional instructions or clarify instructions that I; or, in this case, Judge Mallach; have already given you" and that "if you need anything further from me, please don't hesitate to let me know."

There was no error pursuant to rule 2.1036.(FN24)

FN24: Appellant argues that even if any one of these three alleged trial court errors (see pts. I., II., & III., *ante*) did not prejudice him, the judgment should nonetheless be reversed based on the cumulative prejudice of the errors. (See *People v. Hill* (1998) 17 Cal.4th 800, 844, 72 Cal.Rptr.2d 656, 952 P.2d 673.) In light of our resolution of the issues, there is no ground for reversal based on cumulative error.

*Villa*, 2019 WL 2317149, at *20-22 (alterations in original) (footnotes reformatted).

## 2. *Allen* Charge

The Court of Appeal "reject[ed] [Petitioner's] claim that the instruction violated his due process and unanimous jury trial rights under the California Constitution and the due process clause of the United States Constitution." *Villa*, 2019 WL 2317149, at *21 n.20. Under the Due Process Clause, "[a]ny criminal defendant . . . being tried by a jury is entitled to the uncoerced verdict of that body." *Lowenfield v. Phelps*, 484 U.S. 231, 241 (1988). However, it is not coercive per se for a trial court to encourage a deadlocked jury to reach a verdict by issuing a supplemental jury charge following prolonged deliberations. *See Allen v. United States*, 164 U.S. 492 (1896). Such a charge, known as an *Allen* charge, must be evaluated "in its context and under all the circumstances" to determine if it improperly coerces a jury. *Lowenfield*, 484 U.S. at 237 (1988) (quoting *Jenkins v. United States*, 380 U.S. 445, 446 (1965) (per curiam)).

United States District Court
Northern District of California

In this case, Petitioner contends that the *Allen* charge given was improperly coercive for three reasons.  First, he argues, the charge inappropriately pressured minority jurors.  Petition, ECF No. 1 at 45.  This objection is groundless because the *Allen* court specifically approved of a charge that pressured minority jurors to consider whether their position was reasonable when the majority disagreed with them.  164 U.S. at 501.  Second, Petitioner takes issue with the portion of the charge asking jurors to deliberate "with the goal of reaching a verdict," language which Petitioner argues is contrary to *People v. Gainer*, 19 Cal. 3d 835 (1977).  Petition, ECF No. 1 at 45-46.  But *Gainer* was a state decision which disapproved of the language as a state-level "rule of criminal procedure," not as a matter of federal due process.  19 Cal. 3d at 852.  Even if the language ran counter to *Gainer*, Petitioner has not explained how using that language is an unreasonable application of clearly established federal law.  In fact, the Ninth Circuit has held that use of similar language in an *Allen* charge does not merit habeas relief.  *Parker v. Small*, 665 F.3d 1143, 1145, 1148 (9th Cir. 2011) (instruction that "Your goal as jurors should be to reach a fair and impartial verdict if you are able to do so based solely on the evidence presented and without regard for the consequences of your verdict regardless of how long it takes to do so" did not merit habeas relief).  Finally, Petitioner suggests the fact that the jury convicted him the day after receiving the *Allen* charge indicates coercion.  Petition, ECF No. 1 at 45.  That fact cuts the other way, though, as it shows there were meaningful deliberations rather than an immediate, coerced verdict.

The Court of Appeal reasonably applied clearly established federal law when it determined that the trial court's use of an *Allen* charge was not constitutional error.

### 3.     California Rule of Court 2.1036

Petitioner argues that California Rule of Court 2.1036(a) required the trial court to poll jurors on whether they had specific concerns.  Petition, ECF No. 1 at 46-47.  The trial court in this case did not, and by failing to do so, Petitioner contends, it violated his due process right to fundamental fairness by arbitrarily depriving him of a state law entitlement.  Petition, ECF No. 1 at 46.  But the Court of Appeal expressly interpreted Rule 2.1036(a) as not requiring the trial court

to poll jurors, *Villa*, 2019 WL 2317149, at \*22, and this Court is bound by the state court's interpretation of state law.  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).  Petitioner's argument is without merit.

### E.      Claim Four: Cumulative Error

The Court of Appeal held, "In light of our resolution of the issues, there is no ground for reversal based on cumulative error."  *Villa*, 2019 WL 2317149, at \*22 n.24.  Because it was reasonable for the Court of Appeal to conclude that no constitutional errors occurred, it was likewise reasonable for it to conclude that cumulative error did not render Petitioner's trial unconstitutional.  *See Hayes v. Ayers*, 632 F.3d 500, 524 (9th Cir. 2011) (denying claim of cumulative error when "no error of constitutional magnitude occurred").

## IV.    CONCLUSION

For the reasons above, none of Petitioner's claims warrant habeas relief, so the petition for writ of habeas corpus is **DENIED**.  No certificate of appealability shall issue, because reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

**IT IS SO ORDERED.**

Dated: February 13, 2023

EDWARD J. DAVILA
United States District Judge

United States District Court
Northern District of California